Filed 12/15/21  P. v. Mayberry CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092706 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE015239) |
| v. | |
| DONALD SAMUEL MAYBERRY, | |
| Defendant and Appellant. | |

A jury found defendant Donald Samuel Mayberry guilty of first degree burglary and found true the allegations that defendant had a prior conviction and the crime was committed in the presence of another person, other than an accomplice. Defendant appeals and contends the delay in bringing him to trial violated his state and federal constitutional speedy trial rights. He also asserts no substantial evidence supports the jury's verdict. The People contend, as to the speedy trial rights argument, defendant failed to demonstrate prejudice and COVID-19 constituted good cause to continue the trial under Penal Code[1] section 1382. The People further assert substantial evidence

_____

[1]      All further section references are to the Penal Code unless otherwise specified.

1

supports the jury's verdict.  We conclude the trial delay violated neither defendant's state nor federal constitutional speedy trial rights and substantial evidence supports the jury's verdict.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Trial Continuances, Motions To Dismiss, And Related Background*

On August 26, 2019, the trial court arraigned defendant on a state felony complaint.  On October 23, 2019, defendant pled not guilty and waived his 10-day right to a preliminary hearing -- but not his 60-day right to be brought to trial.[2]  On November 20, 2019, the trial court held defendant to answer on an information and he again pled not guilty.  The original 60th day to bring defendant to trial was January 21, 2020,[3] but on that day defendant entered a limited time waiver to March 5.[4]  On March 5, defendant entered another limited time waiver to 12 days later and the trial court then trailed the case to March 19.[5]  On March 19, the trial court trailed the case to April 22, due to the COVID-19 pandemic.

In the meantime, in response to the COVID-19 pandemic, the Chair of the Judicial Council -- Chief Justice Tani Cantil-Sakauye -- found good cause to issue orders on

---

[2]    Defendant's appeal is focused on this 60-day right to be brought to trial under section 1382, subdivision (a)(2).

[3]    All further date references are to 2020 unless otherwise specified.

[4]    We are unable to confirm this fact in the documents to which the parties cited in the record; however, the parties agree to this fact and we will thus assume the fact to be true.

[5]    We are unable to confirm this fact in the documents to which the parties cited in the record; however, the parties agree to this fact and we will thus assume this fact to be true.

March 23 and 30, authorizing trial courts to extend section 1382's deadline by 60 days.[6] On April 1, the Sacramento County Superior Court's Presiding Judge issued an order applying the March 23 and 30 extensions to section 1382 deadlines in the trial court.

On April 22, the trial court continued defendant's jury trial to June 22. Defendant did not waive time and submitted a motion to dismiss six days later, arguing the substantial delay violated his state and federal constitutional speedy trial rights. The trial court denied the motion on May 4 and found good cause under section 1382 to continue defendant's jury trial for "no more than 90 days past the time limits in that section." Pursuant to a minute order on June 12, the trial court confirmed a trial date for July 21.[7] But three days later, the district attorney requested a continuance to July 27 because no courtrooms were available on July 21; defendant objected. Defendant filed another motion to dismiss on July 23 alleging violation of his state and federal constitutional speedy trial rights. One day later, the trial court denied his motion to dismiss and continued the trial to July 27. The trial commenced on July 29.

A jury found defendant guilty of first degree burglary and also found the prior conviction and presence of another person allegations to be true. The trial court sentenced defendant to a total of 17 years in prison. Defendant timely appealed.

II

*The Trial And Evidence Of Identity*

At trial, the prosecutor established the victims' home was burglarized on October 1, 2018. One of the victims called the police and later provided an inventory of

---

[6]     Chief Justice Cantil-Sakauye thereafter, on April 29, issued another order, finding good cause to extend the section 1382 deadline by another 30 days.

[7]     Nothing in the record indicates when or how the trial date was moved from June 22 to July 21. Neither party addresses nor provides an explanation as to how this occurred.

3

the stolen items, which included the victims' two cell phones. Later the same day, the Sacramento County Sherriff's Department processed the victims' home for fingerprints. A sheriff's deputy lifted five latent prints from a window -- the point of entry -- which was approximately five feet off the ground and had cinderblocks placed underneath it. The screen to the window had been removed.[8] The sheriff's deputy lifted two latent prints from the exterior window frame, one from the window's slider track, and two from the interior window frame. The prosecutor introduced the latent prints at trial. A forensic identification specialist in the sheriff's department compared these latent prints to defendant's fingerprints and found several of them matched. The location of the latent prints showed defendant placed his hands on the window frame while standing in the yard, curled his fingers under the window and around the window frame such that his fingers touched a portion of the window frame inside the house, opened the window, and then lifted himself into the house through the window.

A detective in the sheriff's department searched the pawn and secondhand dealer systems database to determine whether any of the victims' stolen items were pawned. Records showed defendant pawned a cell phone on December 4, 2018, which was of the same brand and type as the victims' stolen cell phones.[9] The detective discovered the pawned phone's identity number appeared to match that of one of the victims' stolen phones.[10] Most importantly, the kiosk where defendant pawned the cell phone had

---

[8] One of the victims testified that, on the morning following the robbery, the screen was not on the window. The victim was "positive the screen was on the night before."

[9] In their briefs, the parties stated two phones had been pawned, but the evidence at trial demonstrated defendant pawned only one of the two stolen phones.

[10] The victims provided a 15-digit number ending in the number 9, and the pawn location provided a 14-digit number that did not end in the number 9. The other 14 numbers matched.

photographed defendant and his identification card, and had scanned his right thumbprint during the pawn transaction. The prosecutor introduced those images at trial.

## DISCUSSION

### I

*The State And Federal Constitutional Speedy Trial Rights Claims*

Defendant asserts the delay between his arraignment on August 26, 2019, and the commencement of trial on July 29 violated his state and federal constitutional rights to a speedy trial. Defendant does not analyze the purported state and federal speedy trial rights violations separately; he appears to assert both rights were violated because he was at risk of contracting COVID-19 during his pretrial incarceration (without any evidence he did or was vulnerable to contracting it), the victims forgot who filled out the inventory of stolen items and from whom or how they obtained the cell phones' identity numbers, and the July 21 to 27 continuance due to a lack of courtroom availability failed to satisfy section 1382's good cause requirement. The People contend the delay violated neither his state nor federal constitutional speedy trial rights because COVID-19 provided good cause to continue the trial under section 1382 and defendant failed to demonstrate actual prejudice. We conclude the trial delay did not violate defendant's state and federal constitutional speedy trial rights.

The California and United States Constitutions provide criminal defendants a right to a speedy trial in state criminal prosecutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1; *People v. Martinez* (2000) 22 Cal.4th 750, 754.) Trial courts generally have broad discretion in their good cause determinations to continue trial and, on review, we apply the abuse of discretion standard. (*People v. Sutton* (2010) 48 Cal.4th 533, 546 [§ 1382]; *People v. Mitchell* (1972) 8 Cal.3d 164, 167 [state speedy trial right]; *United States v. Cabral* (2d Cir. 2020) 979 F.3d 150, 156 [federal speedy trial right].)

# A

## *Defendant Failed To Demonstrate Actual Prejudice For*
## *His State Constitutional Speedy Trial Right Claim*

The California speedy-trial-right test initially requires a defendant demonstrate the delay actually prejudiced the ability to have a fair trial.  (*People v. Lowe* (2007) 40 Cal.4th 937, 942.)  If actual prejudice is proven, the prosecutor must justify the conduct.  (*Ibid.*)  "If the prosecution does that, the trial court must balance the prejudice to the defendant resulting from the delay against the prosecution's justification for the delay."  (*Ibid.*)  Courts define prejudice as " ' "a reasonable probability that in the absence of the error, a result more favorable to [the appellant] would have been reached." ' [Citation.]  A probability does not mean 'more likely than not' but 'a *reasonable chance*, more than an *abstract possibility*.' " (*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.* (2016) 6 Cal.App.5th 1258, 1287.)

Defendant asserts he suffered actual prejudice because the trial delay subjected him to an increased exposure risk to COVID-19 (without citing any evidence he contracted the virus or was particularly vulnerable to it) and the victims forgot who filled out the inventory of stolen items and from whom or where they obtained the cell phones' identification numbers.  Defendant fails to explain how either of the foregoing impacted the *outcome* of this case and how, in the absence of the trial delay, there was a reasonable probability a more favorable result to him would have been reached.  (*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.*, *supra*, 6 Cal.App.5th at p. 1287.)  Specifically, for example, defendant fails to explain how his increased risk of exposure to COVID-19 or the victims' memory loss interfered with his ability to present evidence or obtain or cross-examine witness testimony, or adversely impacted the fairness of his trial.  (See *United States v. Munoz-Amado* (1st Cir. 1999) 182 F.3d 57, 63.)

Defendant merely states, in conclusory fashion, that "[s]imply being in custody put [his] health at risk as a result of the COVID-19 pandemic, which itself is prejudicial"

6

and "[i]n a case where the only stolen item found in [his] possession was those cell phones, this is very significant and it is difficult to argue that [he] was not prejudiced." Defendant provides no analysis or reasoning to support these conclusory statements. We thus disregard them. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [" '[w]e are not obligated to make other arguments for [appellant]' " and "may and do 'disregard conclusory arguments that . . . fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt' "].)

Defendant has failed to demonstrate the trial delay resulted in actual prejudice and we thus conclude defendant's state speedy trial assertion has no merit.

B

*Defendant Failed To Establish The Trial Delay Was Presumptively*

*Prejudicial For His Federal Constitutional Speedy Trial Claim*

The federal speedy trial right attaches upon "the filing of an indictment, information, 'or other formal charge,' or when a suspect 'has been arrested and held to answer.' " (*People v. Martinez, supra*, 22 Cal.4th at p. 761.) To trigger a court's federal speedy trial analysis, defendants must allege the delay between when the right attached and trial was not simply ordinary but presumptively prejudicial. (*Doggett v. United States* (1992) 505 U.S. 647, 651-652 [120 L.Ed.2d 520, 528].) If a defendant demonstrates the delay was presumptively prejudicial, the court balances the length of the delay, the reason for the delay, the defendant's assertion of his right, and any prejudice to the defendant. (*Id.* at p. 652 [120 L.Ed.2d at p. 528]; *Barker v. Wingo* (1972) 407 U.S. 514, 530 [33 L.Ed.2d 101, 117].) These factors are related and must be considered together with all relevant circumstances of the case. (*Barker*, at p. 533 [33 L.Ed.2d at p. 118].) The defendant bears the burden of demonstrating a speedy trial violation under this four-factor test. (*People v. Williams* (2013) 58 Cal.4th 197, 233.)

We do not engage in an analysis of the four-factor test because defendant has failed to demonstrate the delay was presumptively prejudicial. (*Barker v. Wingo, supra*,

7

407 U.S. at p. 530 [33 L.Ed.2d at p. 117] ["[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance"].)  Defendant asserts the trial delay was presumptively prejudicial because it was 11-months long and the United States Supreme Court has "found that delays approaching one year are sufficient to establish a presumption of prejudice." (Citing *Doggett v. United States*, *supra*, 505 U.S. at p. 652, fn. 1 [120 L.Ed.2d at p. 528, fn. 1].)  The People do not specifically address the presumptive prejudice issue but contend the delay lasted only three months and defendant has failed to show prejudice.

We disagree with both parties as to the length of the delay; we conclude the relevant time period is eight months.  Defendant's federal speedy trial right did not attach on the filing of the state felony complaint, as he presumes.  (See *People v. Martinez*, *supra*, 22 Cal.4th at p. 762 [finding filing of state felony complaint does not trigger federal speedy trial right].)  Rather, the right attached when defendant was held to answer on the complaint, which was deemed an information, on November 20, 2019 -- approximately eight months before trial commenced.  (See *id.* at p. 761.)

Although it is true, as defendant asserts, that courts generally find delays approaching one year to be presumptively prejudicial, defendant fails to acknowledge the inquiry is "necessarily dependent upon the peculiar circumstances of the case."  (*Doggett v. United States*, *supra*, 505 U.S. at p. 652, fn. 1 [120 L.Ed.2d at p. 528, fn. 1]; *Barker v. Wingo*, *supra*, 407 U.S. at p. 530 [33 L.Ed.2d at p. 117].)  After considering the peculiar circumstances of this case, we conclude the eight-month delay was not presumptively prejudicial.

First, the eight-month delay had yet to approach a year and thus does not necessitate a finding of presumptive prejudice.  (See *Doggett v. United States*, *supra*, 505 U.S. at p. 652, fn. 1 [120 L.Ed.2d at p. 528, fn. 1].)  Second, *more than half of the eight-month delay pertained to or was during the COVID-19 pandemic*.  Indeed, the first COVID-19 delay occurred on March 19, when the trial court trailed the case to April

8

22.[11] And, the continuances to which defendant objected and which precipitated his motions to dismiss were all related to or occurred during the height of the COVID-19 pandemic. The COVID-19 pandemic is a peculiar circumstance that constitutes a substantial portion of defendant's trial delay. There is no question the continuances associated with the COVID-19 pandemic constitute good cause. (See *Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, 170.)

Third and finally, courts tolerate a longer delay when, as in this case, a case involves some complexity. (See *Barker v. Wingo*, *supra*, 407 U.S. at p. 531 [33 L.Ed.2d at p. 117].) The delay in this case lasted only eight months, yet multiple divisions in the sheriff's department had to coordinate to identify defendant as the perpetrator nearly 11 months after the burglary occurred. Defendant was not caught in the act. (Cf. *Tucker v. Wolff* (9th Cir. 1978) 581 F.2d 235, 237 [delay of about 9 months and 1 week triggered *Barker* analysis for "a simple burglary case" where defendant was caught red handed]; cf. also *Cain v. Smith* (6th Cir. 1982) 686 F.2d 374, 376 [11-and-one-half month delay presumptively prejudicial for a " 'mundane garden variety' robbery" where defendants arrested immediately].)

After considering the peculiar circumstances surrounding the delay in bringing defendant to trial, we conclude the eight-month delay did not give rise to a presumptive prejudice finding and thus defendant has failed to prove a violation of his speedy trial right under the Sixth Amendment.

---

[11] The parties agree the continuance was pursuant to Government Code section 68115, due to the public health crisis.

9

## II

### *The Fingerprint Evidence Constituted Substantial*
### *Evidence Supporting The Burglary Conviction*

Defendant asserts no substantial evidence supports the jury's identification of him as the burglar because: (1) there was no evidence he was inside the home; (2) the inference he stole the cell phone was unsupported given the pawn transaction occurred over a month after the burglary; (3) defendant could have obtained the cell phone by various other means; and (4) the prosecutor did not prove the victims owned the stolen items other than the cell phone. The People contend the victims' testimony regarding the stolen items substantially supports the demonstration of ownership, and the fingerprint and pawn evidence constituted substantial evidence of identity and intent. We conclude the fingerprint and pawn evidence constitutes substantial evidence supporting the jury's verdict.

When assessing a defendant's sufficiency of the evidence claim, a reviewing court must review the entire record in the light most favorable to the judgment to determine whether there is substantial evidence which is reasonable, credible, and of solid value such that a reasonable trier of fact could find a defendant guilty beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) To set aside a trial court's judgment, the reviewing court must conclude the jury's verdict is not supported by substantial evidence under any theory. (*People v. Conners* (2008) 168 Cal.App.4th 443, 453.) Appellate courts must accept the logical inferences a jury might draw from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

A person is guilty of burglary under section 459 if he or she "enters any house . . . with intent to commit grand or petit larceny or any felony." (§ 459.) "Every burglary of an inhabited dwelling house . . . is burglary of the first degree." (§ 460, subd. (a).) The perpetrator's identity is an essential element of any crime. (*People v. Hogue* (1991) 228 Cal.App.3d 1500, 1505.) Fingerprints are strong evidence of identity, and a single

10

fingerprint near an unusual means of access sufficiently supports a burglary conviction. (*People v. Rodis* (1956) 145 Cal.App.2d 44, 46-47.) Juries may also infer guilt of a theft-related offense from a defendant's possession of recently stolen property accompanied with slight corroboration of other inculpatory circumstances tending to show guilt. (*People v. McFarland* (1962) 58 Cal.2d 748, 754.)

Here, the jury heard evidence that defendant's fingerprints were found at the point of entry and, contrary to defendant's assertion, his fingerprints were on the window frame *inside* the house. One of the victims testified the window screen was removed, and the fingerprints showed defendant placed his hands on the window while standing in the yard, curled his fingers underneath the window and onto the window's frame inside the house, and then lifted the window to enter the home. Moreover, the burglary occurred at night and no one had permission to take any of the stolen items. This evidence alone is sufficient to establish the statute's required entry, intent, and identity elements. (See *People v. Corral* (1964) 224 Cal.App.2d 300, 304 [a jury can infer requisite intent when a defendant secretly and silently enters a residence late at night in an unusual manner without the resident's permission]; see also *People v. McEntire* (2016) 247 Cal.App.4th 484, 491 [a hand extending past a screen door satisfies burglary's entry element]; see also *People v. Rodis*, *supra*, 145 Cal.App.2d at pp. 46-47 [jury could infer the defendant burglarized the store when one fingerprint was found on the exterior of a window nine feet above the ground].)

Additionally, defendant possessed one of the stolen cell phones 64 days after the burglary. This possession, coupled with the fingerprint evidence, constitutes circumstantial evidence supporting the burglary conviction because the fingerprints are an inculpatory circumstance tending to show guilt. (See *People v. McFarland*, *supra*, 58 Cal.2d at p. 754; see also *People v. Rodis*, *supra*, 145 Cal.App.2d at pp. 46-47.) A jury, faced with this circumstantial evidence, could draw the reasonable inference defendant committed the burglary. (See *People v. Maury*, *supra*, 30 Cal.4th at p. 396.)

11

Defendant's assertion that he could have received the cell phone through various other means, such as from the house across the street from the victims where homeless individuals frequently lived, is without merit. First, defendant points to no evidence in the record to support an inference that defendant obtained the cell phone from the house across the street or by any other means. Second, we must accept the jury's reasonable inference defendant committed the burglary given the inculpatory fingerprint evidence. (See *People v. Maury*, *supra*, 30 Cal.4th at p. 396.) Regarding defendant's contention the prosecutor failed to demonstrate the victims' ownership of most of the stolen items -- defendant cites no legal authority requiring such demonstration and we are aware of none. After the burglary, one of the victims reported missing a cell phone matching the brand and type of the pawned cell phone and the pawned cell phone's identity number was virtually identical to the stolen cell phone's identity number. We thus conclude the fingerprint and pawn evidence constitutes substantial evidence supporting defendant's burglary conviction.

## DISPOSITION

The judgment is affirmed.

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Mauro, J.

/s/_____
Duarte, J.