Filed 12/4/14  P. v. Green CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E060973 |
| v. | (Super.Ct.No. FWV902066) |
| JAMES EDWARD GREEN, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Stanford E. Reichert, Judge.  Affirmed.

Michael R. Ramos, District Attorney, and Stephanie H. Zeitlin, Deputy District Attorney, for Plaintiff and Appellant.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Respondent.

1

# I

## INTRODUCTION[1]

The original search warrant in this case was executed in September 2005. Defendant James Edward Green was not charged until August 2009 with 15 counts of forgery and 15 counts of identity theft. (§§ 476, 530.5, subd. (a).) Defendant was not arrested until seven years later in October 2012.

The People appeal from the trial court's order dismissing the entire complaint in February 2014. (§ 1238, subd. (a)(1).) The People contend the seven-year prearrest delay in prosecution did not prejudice defendant and was justified for budgetary reasons. (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 915-916.) Given the procedural posture of this case, we focus our analysis on the due process not the speedy trial issue. (*People v. Horning* (2004) 34 Cal.4th 871, 895.)

Based on our review, we conclude the absence of a material witness—as well other evidentiary problems suggested in the record—support the trial court's finding that the delay was prejudicial to defendant. Additionally, the record does not show any credible justification for prosecutorial delay based on economic considerations. Instead, this appears to have been a marginal case that, for many years, no one in law enforcement cared to pursue. We affirm.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

II

FACTUAL AND PROCEDURAL BACKGROUND

Our summary of the facts and proceedings below is based on the reporter's transcript and the clerk's transcript, including the two motions to dismiss filed by defendant and the opposition submitted by the People.

A. *August 2005-November 2012*

On or about August 11, 2005, James Williams was arrested and accused of fraudulently using stolen account information at a department store. Apparently, Williams pleaded guilty at a pre-preliminary hearing in August 2005 to misdemeanor offenses.

Based on Williams's admission that he was involved in a check-cashing scheme, a search warrant was executed at a residence in Rialto on September 30, 2005. Defendant was one of four occupants, all of whom were arrested. Defendant waited a year to be arraigned but the court eventually released defendant and exonerated all bail bonds.

On August 11, 2009, nearly four years later and barely within the four-year statute of limitations, the People filed a 30-count felony complaint against defendant and a codefendant, Dione Monique Davis. An arrest warrant for defendant was issued on September 3, 2009. Defendant was not arrested until another three years later on October 31, 2012. He was finally arraigned on November 2, 2012, more than seven years after the original search warrant was executed in September 2005.

*B. Defendant's Motions to Dismiss*

In March 2013, defendant filed his "Motion to Dismiss for Lack of Speedy Trial and Violation of Due Process." In May 2013, defendant filed a second "Motion to Dismiss for Violation of Due Process." In defendant's dismissal motions, he asserts he was prejudiced by not being able to locate Williams, a material witness.

In opposing defendant's motions, the People submitted declarations from two deputy district attorneys—Michael Abney and Grover D. Merritt—with three attached exhibits. Abney and Merritt declared that the case was under review by the district attorney's office for three years from 2005 until 2008. The attached exhibits—memorandums prepared by three different deputy district attorneys in October 2005, February 2008, and September 2008—characterized the case as "incomplete" and "very old and complicated."

In Abney's memorandum of September 2008, he stated criminal charges should not be filed for lack of sufficient evidence: "Given the age of the case, we need to know whether witnesses will be available for preliminary hearing and/or trial before we file this case." Later, according to Abney, the sheriff's department "initially declined to give further assistance on the case out of frustration over delays." Abney finally obtained some information from a detective and the Arrowhead Credit Union. Abney filed the felony complaint on August 11, 2009. Arrest warrants were then issued for defendant and codefendant Davis. Davis was arraigned in December 2009. She pleaded guilty and was sentenced to a five-year prison term. The 15 victims did not ask for restitution.

4

In November 2010, Merritt was assigned to be an identity theft prosecutor. Merritt learned the sheriff's department had taken no action on the warrant for defendant for the three years after its issuance until his arrest in October 2012. Merritt stated there are about 25 pounds (two and one-half banker's boxes) of materials pertaining to the case, including a police report, personal information, bank statements, and other commercial records. Merritt was able to obtain a date of birth for Willliams, the missing witness, and determine that he had completed a misdemeanor probation and he had a recent address in San Bernardino County, current as of September 2012.

*C. The Hearing*

At the hearing in February 2014, defendant's attorney told the court his investigator still had not been able to locate Williams. Merritt responded that Williams was not a necessary material witness.

The court granted the motions to dismiss, finding "there was a delay in this matter that was not justified that has been prejudic[ial] to the defendant. The matter was initially investigated, started back in August of 2005. The case bounced around the desert for a number of years. No action was taken. Evidence has been lost. We can't locate Mr. Williams anymore. And the Court finds that the delay was unjustified and prejudicial, and the Court grants the *Serna*[2] motion and dismisses the case. [¶] . . . [¶] . . . Mr. Williams is not here. We can't find him anymore. Even though there are documents,

---

[2] *Serna v. Superior Court* (1986) 40 Cal.3d 239.

5

apparently, that might substantiate this claim, it is—the Court finds Mr. Williams is essential to the defense claim. He's gone."

III

DISCUSSION

The delay in not charging defendant until August 2009 for a crime committed in September 2005 and not arresting defendant until October 2012 may constitute a denial of due process under the federal and state Constitutions. (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250.) The parties disagree about whether the delays were prejudicial to defendant or justified by the prosecution. Defendant argues the loss of the material witness, Williams—who implicated defendant—was prejudicial. The People assert that Williams is not actually missing and he is not a material witness. The People blame the delay on the limited resources for law enforcement and prosecution caused by budgetary constraints.

A. *State and Federal Due Process*

The due process clauses of the Fifth and Fourteenth Amendments and article I, section 15 of the California Constitution "protect a defendant from the prejudicial effects of lengthy, unjustified delay between the commission of a crime and the defendant's arrest and charging." (*People v. Cowan* (2010) 50 Cal.4th 401, 430 (*Cowan*).) "'[T]he right of due process protects a criminal defendant's interest in fair adjudication by preventing unjustified delays that weaken the defense through the dimming of memories, the death or disappearance of witnesses, and the loss or destruction of material physical

6

evidence.' [Citation.] Accordingly, '[d]elay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions. A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay. The prosecution may offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay.' [Citation.]" (*People v. Nelson, supra,* 43 Cal.4th at p. 1250.)

The standard of review for a trial court's ruling on a motion to dismiss for prejudicial delay is reviewed for abuse of discretion with deference to any underlying factual findings if substantial evidence supports them. (*Cowan, supra,* 50 Cal.4th at p. 431.) "Under the abuse of discretion standard, 'a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004.) "The trial court's ruling in this regard will be sustained on review unless it falls outside the bounds of reason." (*People v. Mirenda* (2009) 174 Cal.App.4th 1313, 1330 (*Mirenda*).) The question of whether a defendant has established prejudice occasioned by delay is clearly a factual matter to be resolved by the trial court, its decision on that point will not be overturned by an appellate court if supported by substantial evidence. (*People v. Dunn-Gonzalez, supra,* 47 Cal.App.4th at pp. 911-912.)

7

The People argue that, to the extent defendant's motion to dismiss is based on speedy trial grounds, it should be heard after trial based on actual evidence. However, it is within the court's discretion whether to rule on a motion to dismiss on speedy trial or due process grounds before, during, or after trial. (*Cowan, supra,* 50 Cal.4th at p. 431.) It is permissible but not necessary for a trial court to delay hearing the motion until after trial. (*People v. Martinez* (2000) 22 Cal.4th 750, 769-770; *People v. Boysen* (2007) 165 Cal.App.4th 761, 781.) Here the trial court could properly decide defendant's motion based on due process grounds for delay in charging and arrest.

The People assert that federal due process requires dismissal only where the prosecution's delay is shown to be intentional and tactically motivated and where substantial prejudice to the defendant's rights is demonstrated. The California Supreme Court in *Nelson* ultimately concluded that, regardless of whether federal due process requires purposeful delay, "under California law, negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process." (*People v. Nelson, supra*, 43 Cal.4th at p. 1255.) "[W]hether the delay was negligent or purposeful is relevant to the balancing process" but is not determinative. (*Id.* at p. 1256.)

B. *Prejudice*

Prejudice cannot be purely speculative in nature but it need not be significant to shift the burden to the People to justify the delay. Prejudice may be shown by """loss of material witnesses due to lapse of time.""" (*Cowan, supra*, 50 Cal.4th at p. 430, quoting

8

*People v. Catlin* (2001) 26 Cal.4th 81, 107.) The concept of materiality involves "the 'tendency [of the evidence] in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.'" (*People v. Hill* (1992) 3 Cal.App.4th 16, 29, disapproved on another ground in *People v. Nesler* (1997) 16 Cal.4th 561, 582, fn. 5.) In a criminal case, material evidence is evidence that could prove or disprove a fact bearing on the defendant's guilt.

In *Nelson*, the Supreme Court approved the appellate court's holding that the defendant had demonstrated prejudice from the unavailability of witnesses who would have provided relevant testimony. (*People v. Nelson, supra*, 43 Cal.4th at p. 1251.) In *Dunn-Gonzalez*, defendant's motion was based on the fact that a relevant witness had died before the complaint was filed. (*People v. Dunn-Gonzalez, supra,* 47 Cal.App.4th at pp. 902, 906-907.) The trial court specifically found that the defendant suffered prejudice from the loss of the witness, even though the court noted "[c]uriously that works both ways," presumably because some of that witness's testimony may have been favorable for the prosecution. (*Id.* at p. 912.) Thus prejudice was established because the witness was material, not because the witness would have offered exculpatory evidence.

The People argue defendant cannot establish prejudice because Williams is not missing and is not a material witness. To refute defendant's assertion that Williams could not be located, the People contend his address is available based on an online search conducted by Merritt. Whatever information Merritt found was not specifically identified. Merritt did not state there has been any contact with Williams. No address for

9

Williams was included. There is no way of knowing whether Merritt's information was valid or verifiable. Additionally, in February 2014, defense counsel represented to the court that his investigator could not locate Williams using any address. No substantial evidence demonstrated to the trial court that Williams was available as a witness.

Furthermore, substantial evidence supported the trial court's finding that Williams is a material witness. On appeal, the People argue Williams was not material because a possessory case can be proven by possession alone and therefore testimony by Williams was irrelevant. However, a violation of section 530.5, subdivision (a), for identity theft cannot be shown simply by possession. It also requires proof that the offender used the identity material. (§ 530.5, subd. (a).) Williams could supply that element.

After Williams was accused of using stolen account information at a Nordstrom's department store, he was arrested and admitted being involved in a check-cashing scheme. The officers then searched defendant's residence and charged defendant with identity theft and forgery. Defendant's presence at the residence, even if deemed to be constructive possession, is not enough to prove a violation. Williams might be able to testify about how the check-cashing scheme operated and who was involved. Even if Williams is not necessary to prove the People's case, he could have information relating to a defense. However, the delay in this case—now more than nine years since August 2005 when Williams was arrested—means that Williams may have forgotten significant details, whether exculpatory or inculpatory. In balancing prejudice to the defense against

10

justification for delay, the absence of Williams, a material witness is sufficient to demonstrate prejudice. (*Cowan, supra*, 50 Cal.4th at p. 430.)

*C. Justification for Delay*

Once prejudice is shown, the court must evaluate the reason for delay: "Even a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal. Therein lies the delicate task of balancing competing interests." (*People v. Dunn-Gonzalez, supra*, 47 Cal.App.4th at p. 915 [due process context]; *Mirenda, supra*, 174 Cal.App.4th at p. 1327 [same prejudice standard used in state speedy trial context].) "The court's ruling in this regard will be sustained on review unless it falls outside the bounds of reason." (*Mirenda,* at p. 1330.)

The delay in prosecution occurred during two separate periods: a four-year delay from September 2005 until the complaint was filed in August 2009 and a subsequent three-year delay from August 2009 until October 2012 before arresting defendant. Merritt summarized the justification for the delay as follows: "In response to defendant's motions, I conducted an exhaustive search for any records extant anywhere to explain the pre-charging delay from October 2005 to September 2009 and the post-charging delay in the execution of the arrest warrant for [defendant]." Merritt stated, "[t]he only useful recollections I obtained from that canvas are those reflected here,[] as well as the consensus that 'this case bounced around in the desert for a number of years. The

11

[sheriff's office] expressed frustration that the case[] was passed from DDA to DDA without any resolution. . . . These hazy recollections are not buttressed by any sort of interdivisional transfer memoranda, or Chiefs' meeting minutes, or any document beyond what I found in the DAO's STAR system." Merritt's only justifications for the delays were that several different attorneys had handled the matter and the sheriff's office had not enforced the arrest warrant. The People's submissions do not establish a lack of funding or staffing. In other words, the delays were "unjustified" as found by the trial court.

In *Dunn-Gonzalez*, the appellate court upheld the trial court's finding that a short 12-month delay was justified where "the delay in investigation and charging was caused by lack of adequate personnel to investigate and prosecute the case" and "severe cuts in personnel handling fraud cases." (*Dunn-Gonzalez, supra*, 47 Cal.App.4th at p. 915.) Here the seven-year delay is not explained in any comprehensive way and contributed to the loss of a material witness. These circumstances do not establish justifiable delay.

IV

CONCLUSION

We agree with the trial court's findings that defendant suffered prejudice and that the prosecution's delay was unjustified. Williams was the material witness who implicated defendant and who could testify about defendant's involvement or lack of involvement. Although Merritt claims he was able to locate Williams, Merritt does not state he had any actual contact with Williams.

12

Our review of the People's submissions shows this case was considered weak by prosecutors at the outset in October 2005. It was then ignored for three years until September 2008 when Abney succeeded in generating some activity. Nothing more happened from August 2009 until October 2012 when defendant was finally arrested. The People also do not supply any persuasive evidence of budgetary problems lasting for seven years.

Under the circumstances, the trial court's decision to dismiss—after balancing the prejudice to defendant against the lack of credible justification for the delay—did not fall outside the bounds of reason. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

RICHLI
J.

13